# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **EDWARD E. STROUPE JR.,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:04cv00120 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I vacate the final decision of the Commissioner denying benefits and remand the case to the Commissioner for further consideration.

## I. Background and Standard of Review

Plaintiff, Edward E. Stroupe Jr., filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

Case 1:04-cv-00120-PMS   Document 22   Filed 08/11/05   Page 1 of 10   Pageid#: 66

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Stroupe protectively filed his application for SSI[1] on or about August 30, 2002, alleging disability as of September 30, 1994, based on problems with his head, back, right hip, left shoulder and leg and cognitive functioning. (Record, ("R."), at 73-76, 97.) Stroupe's claim was denied both initially and on reconsideration. (R. at 28-30, 34-38, 40-42, 114-25.) Stroupe then requested a hearing before an administrative law judge, ("ALJ").[2] (R. at 46.) The ALJ held a hearing on November 12, 2003, at which Stroupe was not present nor was he represented by counsel. (R. at 282-91.)

By decision dated July 29, 2004, the ALJ denied Stroupe's claim. (R. at 16-23.) The ALJ found that Stroupe had not engaged in substantial gainful activity since the

---

[1]On February 11, 2000, Stroupe applied for SSI and Disability Insurance Benefits, ("DIB"), alleging that he became disabled on September 30, 1994. (R. at 91.) These claims were denied. (R. at 91.) There is no indication that Stroupe requested review of the denial of these claims.

[2]In addition to requesting a hearing, Stroupe indicated that he did not desire to appear at a hearing and that he wished to have a decision made based on the evidence in the record. (R. at 46.)

alleged onset of disability. (R. at 22.) The ALJ found that Stroupe did not suffer from a severe impairment. (R. at 22.) Thus, the ALJ found that Stroupe was not under a disability as defined in the Act, and that he was not entitled to benefits. (R. at 22-23.) *See* 20 C.F.R. § 416.920(c) (2005).

After the ALJ issued his opinion, Stroupe pursued his administrative appeals, (R. at 12), but the Appeals Council denied his request for review. (R. at 6-9.) Stroupe then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2005). The case is before this court on the Commissioner's motion for summary judgment filed February 15, 2005.

## *II. Facts*

Stroupe was born in 1951, (R. at 74), which classifies him as a person closely approaching advanced age under 20 C.F.R. § 416.963(d). He has a high school education with four or more years of college. (R. at 103.) Stroupe has past relevant work experience as a sales clerk and a janitor. (R. at 98.)

Medical expert, Dr. H. C. Alexander, M.D., testified at Stroupe's hearing. (R. at 285-90.) Dr. Alexander stated that his review of the medical evidence showed that Stroupe's medical condition involved the lumbar spine and was described as chronic low back pain. (R. at 286.) He stated that the x-ray of Stroupe's lumbar spine taken on June 18, 1996, showed disc space narrowing with osteoarthritis at the L5-S1 level. (R. at 205, 286-87.) He stated that there was not enough documentation in the file to

-3-

determine whether or not Stroupe's condition met or equaled the listed impairment for disorders of the spine found at 20 C.F.R. Part 404, Subpart P, Appendix 1,§ 1.04. (R. at 289.)

In rendering his decision, the ALJ reviewed records from Charlene M. Truhlik, D.C., a chiropractor; Blue Ridge Physical Therapy; David W. Harrison, Ph.D., a licensed clinical psychologist; and Dr. Cecil B. Knox, III, M.D.

The record shows that on November 24, 1993, Stroupe was seen by Charlene M. Truhlik, D.C., a chiropractor, for complaints of right hip pain resulting from a work-related injury. (R. at 206.) On April 12, 1996, Truhlik completed a medical form to aide Stroupe with his application for food stamps. (R. at 182.) Truhlik indicated that Stroupe suffered from chronic right sacroiliac sprain accompanied by right lower extremity radiculopathy and paresthesias complicated by a lumbar hyperlordosis. (R. at 182.) She indicated that as a result of this diagnosis, Stroupe was unable to sit, stand, bend or walk for prolonged periods of time. (R. at 182.) Truhlik indicated that Stroupe's condition would not improve and would worsen with time. (R. at 182.) She reported that Stroupe's diagnosis rendered him unable to work or severely limited his capacity for self-support for 12 months. (R. at 182.) On June 10, 1996, Truhlik reported that Stroupe's back pain had progressed and he was extremely limited in all of his activities. (R. at 206.) X-rays taken in July 1997 of Stroupe's lumbar spine showed disc degeneration at the L5/S1 level. (R. at 205.) Truhlik indicated that any prolonged sitting, standing or bending would aggravate Stroupe's right hip pain. (R. at 206.) She further indicated that Stroupe was unable to do any lifting. (R. at 206.) In July 1997, examination of Stroupe's back showed tenderness over the L5 area and

-4-

right sacroiliac joint. (R. at 204.) Dorsolumbar range of motion was 70 degrees in flexion and 30 degrees in extension with pain in both motions. (R. at 204.) Neurological testing showed hyperesthesis on the right at the L4 level. (R. at 204.) Truhlik indicated that Stroupe had developed chronic myofascial pain syndrome and that he would continue to have back and hip pain. (R. at 204.)

The record shows that Stroupe saw Dr. Cecil B. Knox, III, M.D., from July 1996 through July 2001 for complaints of chronic pain syndrome associated with a sacroiliac joint dysfunction. (R. at 210-61.) On April 29, 1997, Dr. Knox reported that Stroupe continued to show clinical signs of depressive symptomatology secondary to chronic pain syndrome. (R. at 256.) In July 1997, Dr. Knox reported that Stroupe could sit in a work posture for less than 20 minutes at a time and that he could not stand or walk for more than 20 minutes at a time. (R. at 255.) Dr. Knox reported that Stroupe was capable of less than sedentary work[3] for repetitive activities and less than 15 pounds on a very limited occasional basis. (R. at 255.) He reported that Stroupe was cognitively impaired in his ability to maintain concentration for prolonged periods as well as dealing with the routine stress of work activity. (R. at 255.) Dr. Knox reported that Stroupe met Listing § 1.05 due to the severity of Stroupe's chronic pain syndrome with consistent clinical findings of active somatic dysfunction involving the pelvic girdle associated with his low back pain. (R. at 255.) He reported that Stroupe was fully disabled from any work activity. (R. at 255.) On September 10, 2001, Dr. Knox reported that Stroupe was diagnosed with multi-level degenerative disc disease and sacroiliac joint dysfunction with secondary multi-level somatic

---

[3]Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. *See* 20 C.F.R. § 416.967(a) (2005).

dysfunction as well as psychological sequelae associated with chronic and severe pain syndrome. (R. at 210.)

The record indicates that Stroupe participated in physical therapy at Blue Ridge Physical Therapy from March 1998 through August 2001 for his complaints of low back pain and right hip pain. (R. at 191-202.)

On October 16, 1998, David W. Harrison, Ph.D., a licensed clinical psychologist, evaluated Stroupe and administered various psychological tests. (R. at 183-90.) He opined that Stroupe had cerebral dysfunction and mild anxious depression or an adjustment disorder with dysphoria. (R. at 188-89.)

A consultative evaluation was scheduled with Dr. Glen Sublette, M.D., on April 21, 2003; however, Stroupe failed to attend. (R. at 262.)

### III.  Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2005); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981).  This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work.  *See* 20 C.F.R. § 416.920 (2005).  If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review

Case 1:04-cv-00120-PMS   Document 22   Filed 08/11/05   Page 6 of 10   Pageid#: 71

does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2005).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated July 29, 2004, the ALJ denied Stroupe's claim. (R. at 16-23.) The ALJ found that Stroupe had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 22.) The ALJ found that Stroupe did not suffer from a severe impairment. (R. at 22.) Thus, the ALJ found that Stroupe was not under a disability as defined in the Act, and that he was not entitled to benefits. (R. at 22-23.) *See* 20 C.F.R. § 416.920(c) (2005).

Stroupe has filed a Brief By Plaintiff, ("Plaintiff's Brief"), in this matter. While it is difficult to ascertain what Stroupe's particular arguments are, the undersigned will assume that he is arguing that the ALJ erred by failing to find that he had a severe physical or mental impairment. (Plaintiff's Brief at 1-20.)

As stated above, the court's function in this case is limited to determining

whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

The ALJ in this case found that Stroupe did not suffer from a severe impairment. Based on my review of the record, I do not find that substantial evidence exists to support this finding. The Social Security regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 416.921(a) (2005). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 416.921(b) (2005). The Fourth Circuit held in *Evans v. Heckler*, that ""[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)) (citations omitted).

-8-

The ALJ indicated that he was rejecting the opinions of Dr. Knox and Truhlik. (R. at 21-22.) The ALJ indicated that he was relying on the testimony of the medical expert, Dr. Alexander, as well as the opinions of the state agency physicians, in finding that Stroupe did not suffer from a severe impairment. (R. at 21.) The ALJ noted that "Dr. Haddon[4] further testified that the claimant's condition would not cause any significant work limitation." (R. at 21.) He further noted that "the State agency reviewing physicians could not find a severe impairment based on the contents of the medical file." (R. at 21.) Based on my review of the hearing transcript, Dr. Alexander testified that he could not give an opinion on Stroupe's functional limitations. (R. at 289.) Furthermore, there is no documentation in the file that any state agency physician reviewed the medical evidence and gave an opinion on Stroupe's residual functional capacity. Both Dr. Knox and Truhlik placed restrictions on Stroupe's work-related abilities. (R. at 182, 206, 255.)

In addition, Harrison, a licensed clinical psychologist, evaluated Stroupe and opined that Stroupe had cerebral dysfunction and mild anxious depression or an adjustment disorder with dysphoria. (R. at 188-89.) While the ALJ is not bound to accept a medical source's opinion as to a claimant's residual functional capacity, he must consider any such opinion and explain what, if any, weight was given to it or why he chose to reject it. *See* 20 C.F.R. § 416.927 (2005); *see also King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980). In this case, the ALJ failed to mention this report in his decision. Thus, I cannot find that substantial evidence exists in the record to support the ALJ's finding that Stroupe did not suffer from a severe mental

---

[4]Haddon is actually Dr. Alexander's first name. (R. at 21.)

impairment.

For all of these reasons, I cannot find that the ALJ analyzed all of the evidence relevant to Stroupe's mental impairments, nor that he sufficiently explained his findings and rationale in crediting evidence.   Thus, I also cannot find that substantial evidence supports the Commissioner's decision to deny benefits.

## IV. Conclusion

For the foregoing reasons, I will deny the Commissioner's motion for summary judgment, vacate the Commissioner's decision denying benefits and remand this case to the Commissioner for further development.

An appropriate order will be entered.

DATED:      This 11th day of August, 2005.

/s/  *Pamela Meade Sargent*

UNITED STATES MAGISTRATE JUDGE